IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DAWN ZABLOCKI,

          Plaintiff,

v.                                                    Civil Action No. 2:11-cv-808

C. R. BARD, INC.,

          Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court are all remaining pretrial motions. All are ripe for adjudication.

I.    Background

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 58,000 cases currently pending, approximately 7,000 of which are in the Bard MDL, MDL 2187. In an effort to efficiently and effectively manage this MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions and summary judgment motions, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this

end, I ordered the plaintiffs and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. *See* Pretrial Order ("PTO") # 102, No. 2:10-md-2187 [ECF No. 729]. This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. Thereafter, I entered orders on subsequent waves. Ms. Zablocki's case was selected as a Wave 1 case by the plaintiffs. PTO # 118, No. 2:10-md-2187 [ECF No. 841].

II. **Legal Standards**

    a. **Summary Judgment**

To obtain summary judgment, "the movant must show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In turn, to avoid summary judgment, the nonmovant must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

    b. **Choice of Law**

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases. To determine the applicable state law for a dispositive motion, the court generally refers to the choice-of-law rules of the jurisdiction where the plaintiff first filed her claim. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010).

This case was originally filed in the Northern District of Illinois. Therefore, I use Illinois's choice-of-law rules to determine which state's law to apply to this case. Illinois is the plaintiff's state of residence, where the implant surgery took place, and where their claimed injuries occurred. For the reasons discussed in *Jester v. C. R. Bard*, I agree with the parties that Illinois law applies to the plaintiff's substantive claims. *Jester v. C. R. Bard*, No. 2:13-cv-18843, 2016 WL 7045735, at *2 (S.D. W. Va. Dec. 2, 2016) ("Under [the-most significant-relationship] test, courts should consider the following factors: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and business of the parties, and (4) the place where the relationship, if any, between the parties is centered.").

### III. Discussion

#### a. Bard's Motion for Summary Judgment [ECF No. 51]

Bard's Motion for Summary Judgment [ECF No. 51] is **GRANTED in part** as to the following conceded claims: manufacturing defect, breach of express or implied warranty, or any violation of the Consumer Fraud and Deceptive Practices Act.

Under Illinois law, "[a] product liability action asserting a claim based on negligence . . . falls within the framework of common law negligence." *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 263 (Ill. 2007). "[A] plaintiff must establish the existence of a duty of care owed by the defendant, a breach of that duty, an injury proximately caused by that breach, and damage." *Id.*

Bard contends that the plaintiff's claims for negligent inspection, packaging,

marketing, and selling of the product fail for lack of evidence. The plaintiffs argue that Bard misconstrues the nature of their negligence argument, and that their allegations regarding the alleged negligent inspection, marketing, labeling, packaging, and selling of the Align comprise part of their general negligence claim, rather than distinct theories of recovery. In short, the plaintiff asserts that Bard failed to adequately study or test its mesh products to determine if the products were adequately safe.

A review of the plaintiff's Count I in both the state court Complaint [ECF No. 1-1] and the Master Complaint, Master Compl. ¶¶ 62–67, No. 2:10-md-2187 [ECF No. 199], reveals that the plaintiff asserted three distinct negligence theories under "Count I." The bulk of the Count I allegations make out claims for negligent failure to warn and negligent design defect. The other negligence allegations posit that Bard was "negligent . . . in designing, manufacturing, marketing, labeling, packaging, and selling" the product. Master Compl. ¶ 64, No. 2:10-md-2187; *see also* Compl. ¶ 6(a) ("[Bard] failed to use reasonable care in designing, manufacturing, marketing, labeling, packaging, and selling the product . . . ."). Thus, the plaintiff's concerns that Bard is misconstruing the plaintiff's negligence claim are meritless; Bard simply chose to address the plaintiff's different theories of negligence separately. However, apart from reciting allegations that form the plaintiff's failure to warn and design defect claims, the plaintiff does not offer sufficient support to create a genuine dispute that Bard breached a legal duty that caused the plaintiff's injuries in their "inspection, marketing, labeling, packaging, or selling" of the product. Accordingly,

4

Bard's Motion on these points is **GRANTED**.

After considering the parties' proffered arguments and evidence, I **FIND** that genuine disputes of material fact exist regarding the plaintiff's remaining claims. Accordingly, to the extent Bard's Motion challenges any other claims, the Motion is **DENIED**.

### b. Bard's Motion for Partial Summary Judgment [ECF No. 49]

The question of whether a plaintiff is entitled to punitive damages often involves an interlocking web of factual determinations respecting the defendant's conduct. The evidentiary record is frequently muddled enough on the point that genuine issues of material fact remain. That is the case here. Consequently, Bard is not, at least at this stage of the case, entitled to judgment as a matter of law on the punitive damages claim. Thus, the Motion for Partial Summary Judgment [ECF No. 49] is **DENIED**.

## IV. Conclusion

For the reasons discussed above, it is **ORDERED** that Bard's Motion for Partial Summary Judgment [ECF No. 51] is **GRANTED IN PART** with respect to the plaintiff's claims for manufacturing defect, breach of implied warranty, breach of express warranty, and negligent inspection, packaging, marketing, and selling. Bard's Motion is **DENIED IN PART** with respect to the plaintiff's claims for strict liability failure to warn and negligent failure to warn. It is further **ORDERED** that the Motion for Partial Summary Judgment [ECF No. 49] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record

and any unrepresented party.

                                        ENTER:     March 21, 2017

                                        JOSEPH R. GOODWIN
                                        UNITED STATES DISTRICT JUDGE